**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 25-cv-20499-BLOOM/Elfenbein

XAVIER EDUARDO MARMOL,

      Plaintiff,

v.

JAMES MCHENRY,
Attorney General of the United States;
KRISTI NOEM, Secretary, Department
of Homeland Security; JENNIFER B.
HIGGINS, Director, U.S. Citizenship
and Immigration Services; ERIN
FATICA, Director, USCIS Asylum
Office (ZMI)

      Defendants.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants James McHenry, Kristi Noem,

Jennifer B. Higgins, and Erin Fatica's ("Defendants") Motion to Dismiss Plaintiff's Complaint

for Writ of Mandamus, filed on April 4, 2025. ECF No. [11]. Plaintiff Xavier Eduardo Marmol

("Plaintiff") filed a Response. ECF No. [13]. Defendants did not file a Reply. The Court has

reviewed the Motion, the briefings, the record in this case, the applicable law, and is otherwise

fully advised. For the reasons set forth below, the Motion is granted.

## I.     BACKGROUND

Plaintiff is a citizen and national of Venezuela. ECF No. [1] ¶ 4. On December 21, 2017,

Plaintiff filed a Form I-589, Application for Asylum and for Withholding of Removal. *Id.* ¶ 5.

Since filing the application, Plaintiff states he "has submitted multiple inquiries to officials at

[United States Citizenship and Immigration Services] [("USCIS")], specifically at the Miami

Asylum Office, seeking the scheduling of his asylum interview." *Id.* ¶ 7. Plaintiff also "requested assistance" from Congressman Carlos Gimenez and Senator Marco Rubio. *Id.* ¶ 8. Plaintiff states that, given the "lack of response and action from USCIS, and having not received confirmation of effective interventions" from Congressman Gimenez or Senator Rubio, "Plaintiff has no other option but to seek relief through this Writ of Mandamus." *Id.* ¶ 9.

On February 3, 2025, Plaintiff, proceeding *pro se*, filed a three-count Complaint against Defendants. Plaintiff alleges Defendants violated the Administrative Procedure Act ("APA") by failing to schedule an interview or adjudicate Plaintiff's Pending I-589 Application (Counts I and III). Plaintiff also seeks a writ of mandamus compelling Defendants to schedule his interview or adjudicate his application (Count II). As of the date he filed the Complaint, Plaintiff states USCIS has not scheduled an interview for his I-589 Petition and he has "endured significant financial and emotional burdens as a result of the unreasonable period of time that his case has been pending." *Id.* ¶¶ 6, 11. Plaintiff states that he "has a reasonable fear of persecution based on his political opinion and membership in a particular social group of Venezuelans opposing the government." *Id.* ¶ 10.

Defendants moved to dismiss the Complaint, arguing (1) there is no private right of action under the APA; (2) Plaintiff failed to state a claim under the APA; and (3) the Court lacks subject matter jurisdiction over a claim for mandamus. ECF No. [11] at 1. Plaintiff responded that (1) although the statutory deadline in 8 U.S.C. § 1158(d)(7) does not create a private right of action, he may bring a claim for unreasonable delay; (2) the factors set forth in *Telecommunications Rsch. & Action Ctr. v. F.C.C.,* 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*") weigh in his favor; and (3) mandamus is relief is warranted to ensure prompt adjudication. ECF No. [13].

## II.   LEGAL STANDARD

### A.  12(b)(1) Lack of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). It is presumed that a federal court lacks jurisdiction in a particular case until the plaintiff demonstrates the court has jurisdiction over the subject matter. *See id.* (citing *Turner v. Bank of No. Am.*, 4 U.S. 8, 11 (1799); *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182 (1936) ("It is incumbent upon the plaintiff properly to allege the jurisdictional facts....")).

"Attacks on subject matter jurisdiction, which are governed by Rule 12(b)(1), come in two forms: facial or factual attack." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021). A facial attack on subject matter jurisdiction "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (citing *Lawrence*, 919 F.2d at 1529 (11th Cir. 1990)). Defendants state they raise a facial attack. ECF No. [11] at 2.

### B.  12(b)(6) Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides that a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D.

Fla. 2014) (quoting *Mendez-Arriola v. White Wilson Med. Ctr. PA*, No. 09-cv-495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)).

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). A complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. As a general rule, when reviewing a motion to dismiss, a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). Although the Court is required to accept all of the factual allegations as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. In considering a Rule 12(b) motion to dismiss, the Court is limited to the facts contained in the complaint and attached exhibits. *See Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

### III.    DISCUSSION

#### A.  Mandamus

In accordance with the Eleventh Circuit's instruction that "a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings," the Court first addresses Defendants' argument that the Court lacks subject matter jurisdiction over Plaintiff's mandamus claim. *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). "Mandamus jurisdiction is appropriate only where (1) the defendant owes a clear nondiscretionary duty to the plaintiff; and (2) the plaintiff has exhausted all other avenues of relief." *Lifestar Ambulance Serv., Inc. v. United States*, 365 F.3d 1293, 1295 (11th Cir. 2004). In order "[t]o ensure that mandamus remains an extraordinary form of relief and not a strategy for avoiding administrative exhaustion," plaintiffs are required to "clearly demonstrate that they have no alternative means to obtain the relief they seek." *Id.* at 1298.

Defendants argue that Plaintiff seeks a writ of mandamus to compel an action wholly within the discretion of the Secretary of Homeland Security and the Attorney General, thereby foreclosing mandamus relief. ECF No. [11] at 13-14. Plaintiff states the Immigration and Nationality Act "established a statutory deadline of 45 days to schedule an interview and 180 days for the adjudication of an asylum claim." ECF No. [1] ¶ 12 (citing 8 U.S.C. § 1158(d)). However, section 1158(d)(7) explicitly states "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C. § 1158(d)(7). Therefore, those "deadlines" do not create a private right of action. While Plaintiff argues that "mandamus may issue when agency delay is extreme, depriving the plaintiff of effective relief under the APA," the cases Plaintiff cites do not support such a conclusion. ECF No. [13] at 2, 5

5

(citing *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430 (6th Cir. 2022) (addressing APA claim, not writ of mandamus); *Gonzalez Rosario v. United States Citizenship & Immigr. Servs.*, 365 F. Supp. 3d 1156, 1159 (W.D. Wash. 2018) (parties agreed that USCIS had a duty to adjudicate initial EAD applications within 30 days and that USCIS violates this duty). Plaintiff also "acknowledges the APA provides a primary path to relief," ECF No. [13] at 6, a concession which effectively decides the issue of whether this Court has jurisdiction over the mandamus claim because, "[t]he availability of relief under the Administrative Procedure Act . . . forecloses a grant of a writ of mandamus." *Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1268 (11th Cir. 2011). Therefore, the Court does not have subject matter jurisdiction over the mandamus claim.

### B. APA

Defendants argue that Plaintiff has "no private right of action under the APA where the alleged delay in adjudicating the application is not unreasonable as a matter of law." ECF No. [11] at 2. Because "[t]he passage of time, standing alone, cannot support a claim of unreasonable delay," Defendants argue "Plaintiff has alleged no facts to support that the delay is unreasonable as a matter of law." *Id.* at 4 (citing *INS v. Miranda*, 459 U.S. 14, 18019 (1982)). Defendants state that "Plaintiff's frustration with the wait period in the adjudication of his asylum application is 'inherent in the asylum application process,' and does not on its own establish the unreasonableness of the delay." *Id.* at 4-5 (quoting *Xu v. Cissna*, 434 F. Supp. 3d 43, 54 (S.D.N.Y. 2020)). Defendants urge the Court to employ the factors articulated by the court in *TRAC* in order to determine whether the delay was unreasonable. ECF No. [11] at 6. As Defendant notes, the Eleventh Circuit has not expressly adopted the *TRAC* factors, however some courts in this Circuit have applied them at the motion to dismiss stage. *Id.* (citing *Osechas*

*Lopez v. Mayorkas*, 649 F. Supp. 3d 1278, 1289 (S.D. Fla. 2023); *Mafundu v. Mayorkas*, 699 F. Supp. 3d 1310, 1316 (S.D. Fla. 2023); *Nascimento v. DHS*, 689 F. Supp. 3d 1245, 1250 (S.D. Fla. 2023)). Because Plaintiff appears to concede that the *TRAC* factors are the proper basis upon which to evaluate a claim of unreasonable delay, the Court considers those factors in turn. *See* ECF No. [13] at 3 ("Courts in the Southern District of Florida and elsewhere use TRAC to evaluate long-pending immigration cases.")

> In order to evaluate a claim of unreasonable delay, courts consider:
>
> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.
>
> *TRAC*, 750 F.3d at 80 (internal quotation marks and citations omitted).

The first two factors are typically considered together. *Osechas Lopez v. Mayorkas*, 649 F. Supp. 3d 1278, 1288 (S.D. Fla. 2023). "In other words, these factors get at whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. United States Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). Defendants state that "the rule of reason is USCIS's Last in First Out system ('LIFO') for asylum cases." ECF No. [11] at 7. Because "asylum seekers may maintain gainful employment in the United States by obtaining an Employment Authorization Document ('EAD') while their asylum applications are pending . . . many asylum seekers filed frivolous asylum applications to obtain an EAD." *Tikhonov v. Mayorkas*, No. 23-

cv-24572, 2024 WL 4692146, at *5 (S.D. Fla. Nov. 6, 2024). LIFO gives "priority to the newest cases" thereby ensuring that "efforts to file [asylum applications] solely to obtain work authorization would be fruitless." *Id.* Courts routinely hold that LIFO "is a rule of reason that satisfies the first *TRAC* factor." *Mafundu v. Mayorkas*, 699 F. Supp. 3d 1310, 1317 (S.D. Fla. 2023) (collecting cases). Additionally, Defendants argue the "current backlog of asylum applications is the result of exceptional circumstances beyond USCIS's control, including surges of migrants arriving at the southern border and global migration." ECF No. [11] at 9.

Plaintiff does not respond to Defendants' argument that LIFO constitutes a "rule of reason," but merely argues the fact that "more than seven years have elapsed without a final adjudication" is "unreasonable." ECF No. [13] at 3. Although "[n]o bright lines have been drawn in this context," Plaintiff is correct that "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable." *Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022) (collecting cases). However, "whether a 'rule of reason' exists for agency action 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency action is presumed to be unlawful." *Id.* (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)). Instead, the determination will largely depend "upon the complexity of the task at hand, the significan[ce] (and permanence) of the outcome, and the resources available to the agency." *Id.* (quoting *Mashpee*, 336 F.3d at 1102). Although Plaintiff notes that the "'suggested' . . . 45-day timeframe for the interview and 180 days for final adjudication" outlined in section 1158(d)(5) "underscore a legislative expectation that cases be resolved in a timely fashion," Plaintiff acknowledges that these deadlines "are not strictly enforceable." *Id.* at 3-4. Although Plaintiff's wait time of seven years exceeds that which other courts have found to be "unreasonable," Plaintiff has not argued

that LIFO fails as a "rule of reason" and acknowledges that the statutory timeframes are merely "suggested." Therefore, Factors One and Two weigh slightly in Defendants' favor.

Defendants argue that Factors Three and Five—whether "human health and welfare are at stake" and "the nature and extent of the interests prejudiced by delay"—weigh in their favor. ECF No. [11] at 9. First Defendants state that "Plaintiff has not pled, much less shown, that human health and welfare are at stake" and "[t]he nature and extent of Plaintiff's interests prejudiced by any delay is minimal compared to the prejudice to the asylum program that an order compelling immediate adjudication of his application would cause." *Id.* at 10.

Plaintiff responds that he "has endured significant financial and emotional burdens as a result of the unreasonable period of time that his case has been pending." ECF No. [1] ¶ 11. However, as Defendants note, Plaintiff fails to explain[1] those alleged burdens, given that "[a]sylum applicants may remain in the United States while they await adjudication" and "obtain authorization for employment in the United States while their asylum applications are pending." ECF No. [11] at 10. Relatedly, Plaintiff's statement that he "has a reasonable fear of persecution based on his political opinion and membership in a particular social group of Venezuelans opposing the government," has no bearing on the present analysis given that he may remain in the United States during the pendency of his application. ECF No. [1] ¶ 10. While the seven-year delay in adjudication of Plaintiff's Form I-589 is undoubtedly frustrating, Plaintiff has not alleged any concrete harms beyond those "inherent in the immigration process." *Echeverri v. United States Citizenship & Immigr. Servs.*, No. 23-cv-21711, 2023 WL 5350810, at *7 (S.D.

---

[1] In his Response, Plaintiff states his "spouse has been diagnosed with depression and anxiety attributable to the prolonged uncertainty surrounding this unadjudicated case" and his "minor daughter is likewise affected by the [i]nstability created by her father's unresolved immigration status." ECF No. [13] at 2. However, "[i]t is well-established that a party cannot amend his or her complaint via asserting additional facts in a response brief." *Hawkins v. I.S. Appliances, Inc.*, No. 23-cv-60386, 2023 WL 11972510, at *2 (S.D. Fla. July 19, 2023). Therefore, the Court will not consider those additional factual assertions.

Fla. Aug. 21, 2023); *see also Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021) ("While the Court does not doubt that [Plaintiff] has an interest in prompt adjudication, so too do many others facing similar circumstances."). Therefore, the Third and Fifth Factors favor Defendants.

Regarding the Fourth Factor, Defendants argue the effect of expediting adjudication of Plaintiff's application would be to "prejudice other asylum applicants who have been waiting as long, if not longer than Plaintiff." ECF No. [11] at 12. Indeed, the effect of prioritizing Plaintiff's application over others would be to "push[] [Plaintiff] ahead of applicants who have been waiting longer." *Echeverri*, 2023 WL 5350810, at *7. Plaintiff argues that "indefinite bureaucratic backlog cannot excuse a multi-year inaction, especially after scheduling and then canceling an interview[2] without reason." ECF No. [13] at 4. While the Court does not minimize the frustration Plaintiff likely experiences as a result of the delay, the Court "has 'no basis for reordering agency priorities.'" *Echeverri*, 2023 WL 5350810, at *7. Because Plaintiff "fail[s] to explain why the Court should compel the USCIS to adjudicate [his] asylum application before those that have ben waiting as long or longer," the Fourth Factor weighs in Defendants' favor. *Zhang v. Wolf*, No. 19-cv-5370, 2020 WL 5878255, at *5 (E.D.N.Y. Sept. 30, 2020)).

Defendants argue that the Sixth Factor is neutral because "Plaintiff has not alleged, much less identified, any intentional, bad faith actions by Defendants, but it is not necessary for Plaintiff to do so." ECF No. [11] at 12. Although Plaintiff points to the fact that, following his filing of the instant action, USCIS scheduled and then canceled an asylum interview, those allegations are not part of the Complaint, but, rather, asserted in Plaintiff's Response. ECF No.

---

[2] In his Response, Plaintiff states that, in February 2025 after Plaintiff had filed the instant action, "USCIS notified Plaintiff that his asylum interview would take place on March 10, 2025, suggesting tangible progress. However, days prior to that date, USCIS unilaterally canceled the interview without giving any reason, thereby perpetuating Plaintiff's limbo and underscoring the agency's ongoing inaction." ECF No. [13] at 1-2. For the Court to consider any subsequent developments, Plaintiff was required to file an Amended Complaint. *See Wennersten v. Com. Diver Servs., N.A. Inc.*, No. 12-cv-60975, 2012 WL 3230419, at *1 n. 1 (S.D. Fla. Aug. 6, 2012). Therefore, the Court will not consider those additional factual assertions.

[13] at 1-2. Therefore, the Court may not properly consider them in analyzing the Motion. *See Wennersten*, 2012 WL 3230419, at *1 n. 1. As Plaintiff did not allege bad faith on the part of USCIS, although bad faith is not necessary for the Court to find a delay unreasonable, the Sixth Factor is neutral.

Based on the *TRAC* analysis, the Court finds that Factors One, Two, Three, Four, and Five all weigh in Defendants' favor, while Factor Six is neutral. As such, the Court determines that the delay was not unreasonable and judicial intervention is inappropriate. The Defendants' Motion is granted.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Defendants' Motion to Dismiss, **ECF No. [11]**, is **GRANTED**.

2.   The Complaint, **ECF No. [1]** is **DISMISSED WITHOUT PREJUDICE**.

3.   Plaintiff's Motion for Summary Judgment, **ECF No. [21]**, is **DENIED AS MOOT**.

4.   The Clerk shall **CLOSE** the case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 3, 2025.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Xavier Eduardo Marmol
15805 SW 197th Ave
Miami, FL 33187
786-200-9711

Email: xmarmol@gmail.com
PRO SE